**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BRENDA L. BLOWERS,

                      Plaintiff,

  v.                                            No. 05-CV-557
                                                        (NAM/DRH)

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration,

                      Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

LEGAL SERVICES OF CENTRAL         CHRISTOPHER CADIN, ESQ.
   NEW YORK                             PAUL J. LUPIA, ESQ.
Attorney for Plaintiff
472 South Salina Street
Suite 300
Syracuse, New York 13202

HON. GLENN T. SUDDABY                WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

    Plaintiff Brenda L. Blowers ("Blowers") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security

---

[1] Michael J. Astrue is the current Commissioner of Social Security. He shall be substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

("Commissioner") denying her application for benefits under the Social Security Act. Blowers moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 11, 12. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

## I. Procedural History

On April 25, 2002, Blowers filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 47, 52.[3] That application was denied on July 3, 2002. T. 22-24. Blowers requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Joseph Medicis, Jr. on March 4, 2004. T. 13, 26. In a decision dated April 20, 2004, the ALJ held that Blowers was not entitled to disability benefits. T. 19-20. On May 20, 2004, Blowers filed a request for review with the Appeals Council. T. 194-97. The Appeals Council denied Blowers' request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 6-8. This action followed.

## II. Contentions

Blowers contends that the ALJ's residual functional capacity assessment and conclusion that she was not disabled were not supported by substantial evidence in the record. Blowers also contends that the ALJ failed to give proper weight to the medical

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 8.

2

evidence. The Commissioner contends that there was substantial evidence to support the determination that Blowers was not disabled.

### III. Facts

The facts contained in Blowers' brief are adopted and are not disputed by the Commissioner. Def. Mem. of Law (Docket No. 12) at 1. Blowers, now thirty-seven, previously worked as a cleaner at a laundromat and a child care provider at a bowling alley. T. 47, 76. Blowers has a tenth grade education and attended special education classes throughout her schooling. T. 81, 208. Blowers alleges that she became disabled on March 4, 2001 due to depression and a learning disability. T. 47, 52.

### IV.  Standard of Review
#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is

"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

### V.  Discussion

### A. Medical Evidence

Blowers alleges that she became disabled on March 4, 2001 due to depression and a learning disability. T. 47, 52. On February 1, 2002, Blowers was evaluated by Dr. Norman J. Lesswing, a licensed clinical psychologist. T. 113. Dr. Lesswing concluded that Blowers did not display signs of any major personality dysfunction or psychopathology. T. 115. However, Dr. Lesswing found that Blowers was not capable of managing and sustaining gainful employment, instead recommending only part-time work in a setting that

would accommodate her delays and challenges.  Id.  On March 28, 2002, Blowers was examined by Dr. Sheryl Holley for the purpose of determining employability.  T. 122.  Dr. Holley concluded that Blowers should not resume work until July 1, 2002 because of her depression and headaches but noted that she did not expect Blowers' impairments to last for more than one year.  T. 123.

On June 3, 2002, Blowers was given a psychiatric examination by Dr. Kristen Barry, a licensed psychologist.  T. 136.  Dr. Barry noted that Blowers appeared to have some difficulty handling stressors but did not have any significant psychiatric symptomatolgy.  T. 139.  Dr. Barry also indicated that Blowers' allegations as to her limitations were not consistent with the examination results.  Id.  On June 13, 2002, Blowers underwent a mental residual functional capacity assessment.  T. 141.  Dr. M. Apacible, a state agency medical consultant, evaluated Blowers and concluded that with the exception of a moderate limitation in the ability to understand and carry out detailed instructions, she was not significantly limited in any other functional capacity.  T. 141-42.  Dr. Apacible also concluded that Blowers had mild limitations in her daily living activities, social functioning, and concentration, persistence or pace.  T. 154.

On January 17, 2003 and March 25, 2004, Blowers was examined by Dr. Dawn Brink-Cymerman.  T. 178, 189.  After each examination, Dr. Brink-Cymerman concluded that there were no physical reasons that prevented Blowers from working.  T. 178, 189-92. On January 22, 2004, Blowers underwent a psychological examination by Dr. Judy Hayman, a licensed psychologist.  T. 159.  Dr. Hayman concluded that if Blowers reduced her stress level at home and developed better coping and parenting skills, she would be

able to participate in a structured, supportive job program.  T. 162-64.

### B. Listings 12.05© & (d)

Blowers contends that the ALJ erred when he determined that she did not meet or medically equal the disability requirements under §§ 12.05© or (d).

"Section 12.05© applies when two elements are met: the claimant must have (1) 'a valid verbal, performance, or full scale IQ of 60 through 70' and (2) 'a physical or other mental impairment imposing additional and significant work-related limitation of function.'" Baneky v. Apfel, 997 F. Supp. 543, 544 (S.D.N.Y. 1998) (quoting 20 C.F.R. Part 404, Subp. P, App. 1, § 12.05©).  Section 12.05(d) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration."  20 C.F.R. Part 404, Subp. P, App. 1, § 12.05(d).

As to the first requirement for meeting the disability requirement in §§12.05© and (d), the ALJ found that Blowers' IQ scores were severe within the meaning of the Regulations. T. 15.  However, the ALJ found that Blowers' impairments failed to meet the second disability criterion in § 12.05©, concluding that "while [Blowers] has had the diagnosis of depression, the evidence fails to show that this impairment, or any other impairment, imposes additional and significant limitation of function."  T. 16.  Blowers contends that the ALJ failed to give sufficient rationale for his conclusion.  See Pl. Mem. of Law (Docket No.

11) at 12.  In support of his conclusion, the ALJ cited various medical records from Blowers' treating and non-treating physicians.  T. 15-16.

In his decision, the ALJ noted that on March 28, 2002, Dr. Tran observed that Blowers' affect was extremely depressed and diagnosed her as having depression.  T. 15, 117-18.  She was also examined at Psychological Health Care in April 2002 and complained of depression.  T. 15, 124-133.[4]  On June 3, 2002, Blowers was consultatively evaluated by Dr. Barry.  T. 15, 136.  The ALJ noted that Dr. Barry found no evidence of any psychiatric symptomatology and made no Axis I or II diagnoses.  T. 15, 139.  On January 22, 2004, Blowers was examined by Dr. Hayman.  T. 16, 159.  The ALJ noted that Dr. Hayman did not observe any depression or anxiety, but Blowers described feeling depressed in the past and reported numerous symptoms of depression.  T. 16, 160.  Based on his review of the relevant medical records, the ALJ found that although records indicated that Blowers had suffered from depression in the past, the objective medical evidence supported the conclusion that her condition was intermittent and short term at most.  T. 16.  Thus, although the record does reflect some evidence of depression, there is substantial evidence in the record to support the ALJ's conclusion that Blowers' depression did not constitute an additional and significant limitation of function as required by § 12.05(c).  T. 16.[5]

---

[4] During each evaluation, Blowers' depression was rated four out of ten on a severity scale.  T. 125, 133.

[5] Blowers also contends that she suffers from a "potential" organic mental disorder, learning disorder, and chronic headaches.  See Pl. Mem. of Law at 11, 13.  Although there is some evidence in the record to support her contention, Blowers fails to establish that these impairments were severe within the meaning of the Regulations.  Further, to the extent that Blowers argues that the ALJ's failure to discuss these alleged impairments was

8

>As to § 12.05(d), the ALJ concluded that:
>
>based on [Blowers'] own statements regarding her activities of daily living and capabilities, it is concluded that she does not have more than mild restriction of activities of daily living, more than mild difficulty maintaining social functioning or more than mild difficulty maintaining concentration, persistence or pace. Furthermore, there is no evidence that she has repeated episodes of deterioration, each of extended duration.

T. 16. Blowers contends that she had marked functional limitations in maintaining concentration, persistence, or pace and in maintaining social functioning. As to maintaining concentration, persistence, or pace, Dr. Apacible noted that Blowers was moderately limited in her ability to carry out detailed instructions but overall had only a mild limitation. T. 141, 154. Moreover, Dr. Barry concluded that Blowers "is able to follow and understand simple directions and instructions, and she is able to maintain her attention and concentration." T. 138-39. As to social functioning, the ALJ relied on Blowers' own testimony that she cared for six children, attended appointments, performed housework, used public transportation, and visited the Community Center. T. 16. Although there is some evidence of limited social functioning, Blowers fails to demonstrate that the ALJ's conclusion was in error. Thus, there is substantial evidence to support the ALJ's finding that Blowers fails to meet the disability criteria for maintaining concentration, persistence, or pace and maintaining social functioning.

Therefore, it is recommended that the Commissioner's finding in this regard be

---

in error, this contention must fail because "'[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.'" Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted)).

9

affirmed.

### C. Residual Functional Capacity

Blowers contends that substantial evidence does not support the ALJ's findings regarding her residual functional capacity ("RFC").

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see also 20 C.F.R. §§ 404.1545, 416.945 (2003). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see also 20 C.F.R. § § 404.1545, 416.960 (2003).

Here, the ALJ concluded that Blowers' impairments did not prevent her from performing her past relevant work. T. 18-19. The ALJ found that Blowers had the RFC to:

> meet the physical demands of work at all exertional levels and has the ability to understand, carry out and remember simple instructions, respond appropriately to supervision, co-workers, and the usual work situations, deal with changes in a routine work setting and maintain attention and

concentration.

T. 19.  However, Blowers contends that the record is inadequate to support the ALJ's determination that she could return to prior relevant work.  Pl. Mem. of Law at 1.  In support of his conclusion, the ALJ cited the determination of Dr. Brink-Cymerman, Blowers' treating physician, that Blowers had no physical limitations.  T. 17, 189-92.  The ALJ also cited Dr. Barry's conclusion that Blowers should be able to follow simple directions, maintain attention and concentration, and perform simple tasks.  T. 17, 136-39.[6]  Further, the ALJ discussed Blowers ability to work in the past despite her intellectual difficulties and her normal daily activities as evidence that her alleged impairments were not so severe as to preclude all work activity.  T. 18.  Thus, there is substantial evidence to support the ALJ's determination that Blowers retained the RFC to perform her past relevant work.

Accordingly, it is recommended that the Commissioner's findings in this regard be affirmed.[7]

### VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Blowers' motion for a finding of disability (Docket No. 11) be **DENIED**, and the

---

[6] Dr. Barry also noted that "[Blowers'] allegations [of impairment] are not found to be consistent with the examination results."  T. 139.

[7] Blowers contends that the ALJ failed to give proper weight to the medical evidence.  Pl. Mem. of Law at 19-20.  However, as discussed supra, the ALJ properly weighed the medical evidence provided, giving more weight to the evidence that was consistent with the overall record.  T. 18.  Thus, Blowers' contention on this ground is without merit.

11

Commissioner's cross-motion (Docket No. 12) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: April 12, 2007
       Albany, New York

*David R. Homer*
United States Magistrate Judge