**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRENDA L. BLOWERS,**

        **Plaintiff,**

 vs.              **05-CV-557**
                   **(NAM/DRH)**

**MICHAEL J. ASTRUE**,
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Legal Services of Central<br>New York<br>472 South Salina Street<br>Suite 300<br>Syracuse, New York 13202<br>Attorneys For Plaintiff | Christopher Cadin, Esq.<br>Paul J. Lupia, Esq. |
| Glenn T. Suddaby<br>United States Attorney for<br>the Northern District of New York<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, New York 13261-7198<br>Attorney for Defendant | William H. Pease, Esq. |

   ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

**Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

  Plaintiff Brenda L. Bowers brings the above-captioned action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking a review of the Commissioner of Social

Security's decision to deny her application for Supplemental Security Income (SSI) benefits. This matter was referred to United States Magistrate Judge David R. Homer for a Report-Recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.3(d).  Magistrate Judge Homer recommended that this Court enter judgment on the pleadings affirming the Commissioner's decision denying disability and dismissing plaintiff's claims.  Presently before the Court is plaintiff's objection to the Report-Recommendation.

## II.   PROCEDURAL HISTORY

There being no objection, the Court adopts the Procedural History set forth by Magistrate Judge Homer in the Report-Recommendation:

> On April 25, 2002, Blowers filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 47, 52. That application was denied on July 3, 2002. T. 22-24. Blowers requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Joseph Medicis, Jr. on March 4, 2004. T. 13, 26. In a decision dated April 20, 2004, the ALJ held that Blowers was not entitled to disability benefits. T. 19-20. On May 20, 2004, Blowers filed a request for review with the Appeals Council. T. 194-97. The Appeals Council denied Blowers' request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 6-8. This action followed.

(Report-Recommendation, Dkt. No. 14, p. 2).

## III.   BACKGROUND

According to the Administrative Transcript:  Plaintiff was born on June 23, 1969. (T. 47). The highest level of education plaintiff attained was tenth grade.  (T. 208).  Throughout her schooling, she was in special education.  (T. 208).  When plaintiff was 11 years old, she had a verbal IQ of 57, a performance IQ of 64 and a full scale IQ of 56. (T. 15).  Plaintiff was tested again in 1984 at 14 years of age and was found to have a verbal IQ of 62, a performance IQ of 65 and a full scale IQ of 60 classifying her as mildly mentally retarded. (T. 15).  The plaintiff is a

2

widow with six children. (T. 205). Her husband (the father of her four eldest children) committed suicide and the father of the two younger children is absent. (T. 124). Her eldest son has been removed from the home for inappropriate behavior directed at the other children. (T. 124).

Plaintiff alleges that she became disabled on March 4, 2001 due to depression and a learning disorder and filed for SSI benefits on April 25, 2002. (T. 13, 47). Prior to filing for benefits, from 1998 until 2001, plaintiff was employed at a laundromat as a "cleaner" and as a child care provider in the daycare center of a bowling alley. (T. 17, 98, 209). She worked at the laundromat 40 hours per week, five days a week cleaning the washing machines and dryers. (T. 76). She alleges that she stopped working at the laundromat at the suggestion of child protective services. (T. 75). Although the record also indicates that she was fired from her job because "her children were constantly calling her at work". (T. 17, 160). She has not been employed since filing her application. (T. 14).

Plaintiff underwent a psychological evaluation on February 1, 2002 by Dr. Norman J. Lesswing, Ph. D. (T. 113-15). Dr. Lesswing reported that plaintiff had a pleasant demeanor and was polite and cooperative. (T. 114). Plaintiff described her health as good. (T. 114). On the WAIS-III IQ test, she had a verbal IQ score of 65, performance of 69, and full scale of 64 which classified her with Mild Mental Retardation. (T. 114). Plaintiff did not display signs of any major personality dysfunction or psychopathology. (T. 115). The doctor concluded that she was not capable of managing and sustaining gainful, competitive, vocational employment but her limitations and demands would allow her to function on a part-time basis. (T. 115).

On March 28, 2002, plaintiff was seen by Dr. Badiep Tran. (T. 117). Plaintiff complained

3

of being depressed with no energy or motivation to get out of bed. (T. 15). Her affect was noted as extremely depressed, eye contact and responses to questions were limited. (T. 15). Dr. Tran diagnosed her as having depression, prescribed Paxil and referred her to counseling. (T. 117).

On March 28, 2002, Dr. Sheryl Holley, plaintiff's treating physician, completed a "Statement for Determination of Employability". The doctor noted that plaintiff should be exempt from employment due to depression and headaches, for less than one year, until July 1, 2002. (T. 123).

On June 3, 2002, a psychiatric examination was performed by Dr. Kristen Barry. (T. 136-40). Plaintiff reported that she was unable to work because she had to watch her children, and had no education. (T. 136). Plaintiff denied any suicidal ideation, anxiety, panic attacks, manic episodes, hallucinations, delusions or paranoia. (T. 137). She reported that she had headaches and thyroid problems, but was otherwise in good health. (T. 137). At the time of the examination, plaintiff was receiving outpatient counseling services and taking Paxil as prescribed by her primary care physician. (T. 136). Dr. Barry concluded that plaintiff was able to follow and understand simple directions and instructions, maintain attention and concentration, and perform simple tasks. (T. 139). She stated that plaintiff's allegations were not consistent with the examination results. (T. 139).

Dr. M. Apacible, a state agency medical consultant, evaluated plaintiff and concluded that with the exception of a moderate limitation in the ability to understand and carry out detailed instructions, she was not significantly limited in any other functional capacity. (T. 141-42). Dr. Apacible also concluded that plaintiff had mild limitations in her daily living activities, social functioning, and concentration, persistence and pace. (T. 154).

4

On January 22, 2004, plaintiff underwent a psychological evaluation by Dr. Judy Hayman. (T. 159-64). Plaintiff reported that she had been fired from her most recent job at the laundromat because her children were constantly calling her at work. (T. 17, 160). She also stated that she left her job at the bowling alley to spend more time with her children. (T. 16). Upon examination, plaintiff was alert, casually dressed, and neatly and cleanly groomed. (T. 160). She was cooperative and was able to continue working on difficult tasks without noticeable frustration. (T. 160). She was able to understand and respond appropriately to task instructions and questions. (T. 160). No depression or anxiety was observed. (T. 160). Dr. Hayman concluded that plaintiff was able to function adequately for daily living skills, such as tasks around the home, interpersonal relationships, and activities in the community. (T. 162). The Axis diagnoses included Major Depressive Disorder, Recurrent, Moderate; Mild Mental Retardation; Hypothyroid; history of concussion; problems with primary support group and illiteracy. (T. 163). Dr. Hayman concluded that if plaintiff reduced her stress level at home and developed better coping and parenting skills, she would be able to participate in a structured, supportive job program. (T. 162-164).

On January 17, 2003 and March 25, 2004, the plaintiff was examined by her treating physician, Dr. Dawn Brink-Cymerman. (T. 17, 178, 189). After each examination, Dr. Brink-Cymerman concluded that there were no physical reasons that prevented plaintiff from working. (T. 178, 189-92).

In the Functional Report plaintiff submitted in support of her application for disability benefits, she states that she shops for groceries once a month. (T. 69). However, she cannot make change so she needs her daughter to accompany her to the store. (T. 208). Her hobbies include

5

collecting dolls that she receives as gifts. (T. 70). She is able to go out alone and use public transportation. (T. 92). At the time of the hearing before the ALJ, plaintiff testified that she resided with her five children, two dogs and her boyfriend. (T. 67, 205). Plaintiff stated that she is able to care for her own personal hygiene, cook "easy things", do laundry and pick up the house "once in awhile". (T. 214-215). Plaintiff testified that she never learned to drive, never reads the newspaper and is unable to pay her own bills (T. 70, 207, 208). Plaintiff stated that she will walk to the shopping mall "once in awhile" with her daughters from her home.[1] (T. 216-217). Plaintiff testified that she does not go to the movies or attend church. (T. 218). Plaintiff also stated that she visits her mother and goes to the Community Center. (T. 16).

## IV.     ADMINISTRATIVE LAW JUDGE'S DECISION

To be eligible for Social Security disability benefits, a claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

---

[1] The ALJ noted that the distance from the plaintiff's home to the shopping mall was "at least a half a mile, a mile". (T. 217).

6

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In his decision, the ALJ found at the first step that plaintiff has not engaged in gainful activity since the filing date of her application. (T. 14).  At the second step, the ALJ determined that plaintiff has mild mental retardation with valid verbal, performance and full scale IQ scores of 60 through 70, which is severe within the meaning of the Regulations. (T. 17).  At the third step, the ALJ concluded that plaintiff's impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. (T. 19).  At the fourth step, the ALJ found that despite plaintiff's impairment, she had the residual functional capacity to perform her past relevant work. (T. 19).  The ALJ concluded that plaintiff was not disabled and denied her application for SSI benefits.  The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  This action followed.

## V.     REPORT-RECOMMENDATION

In the Report-Recommendation, Magistrate Judge Homer found that: (1) there is substantial evidence to support the ALJ's finding that plaintiff's depression did not constitute an additional and significant limitation of function as required by § 12.05(c); and (2) there is substantial evidence to support the ALJ's determination that plaintiff retained the residual functional capacity to perform her past relevant work.

Presently before the Court are plaintiff's objections to the Report- Recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report-Recommendation to which a party specifically objects.  Failure to object timely to any portion of a Magistrate's Report-Recommendation operates as a waiver of further

judicial review of those matters. *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**VI.    DISCUSSION**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether plaintiff is disabled.  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and citation omitted).

Plaintiff submitted a Memorandum of Law objecting to the Report-Recommendation. Plaintiff claims the magistrate judge erroneously found substantial evidence to support the ALJ's conclusion that plaintiff's "other limitations" are not severe within the meaning of §12.05(c) of the Regulations. *See* Plaintiff's Objections at p. 5.  Specifically, plaintiff argues that she suffers from "other limitations", including, chronic headaches, depression, and a learning disability, which render her disabled and should have been evaluated as part of the second prong of Listing § 12.05(c).  *Id.*

"For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Brown v. Apfel*, 174 F.3d 59, 64 (2d Cir. 1999) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).  For

purposes of Social Security benefits, as an adult, in order to be considered disabled due to mental retardation certain criteria are necessary. *Meashaw v. Chater*, 1997 WL 16345, *3 (N.D.N.Y. 1997).  First, the claimant must establish a valid verbal, performance, or full scale IQ of 60 through 70.  *Meashaw*, 1997 WL 16345, at *3; 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.05(c).  In addition, a claimant must establish either: (1) a physical or other mental impairment imposing an additional and significant work-related limitation of function; or (2) claimant suffers from one of the following: (a) marked restriction in activities of daily living; (b) marked difficulties in maintaining social functioning; (c) deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work setting or elsewhere); or (d) repeated episodes of deterioration or decompensation in work or work-like settings. *See Keitt v. Barnhart*, 2005 WL 1258918, *4 (E.D.N.Y. 2005); *Meashaw*, 1991 WL 16345, at *3; 20 C.F.R. Pt. 404, Subpt. P, App.1, §12.05(c); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(d).

The ALJ found that plaintiff's performance IQ scores of 60 through 70 met the criteria of the first requirement.  (T. 15).  With respect to the second requirement, plaintiff contends that her "other limitations" are severe and impose significant work-related limitation of function at a *de minimis* level.  *See* Plaintiff's Objections at p. 5.

The Second Circuit has held that in analyzing the second step of the five step disability analysis, the severity test may do no more than screen out *de minimis* claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *See Meashaw*, 1997 WL 16345, at *4 (the *de minimis* screening device eliminates frivolous claims, therefore it is rare that an ALJ will conclude the

analysis at step-two).[2]  This Circuit has not yet ruled on what test should be utilized in determining whether a claimant's "physical or other mental impairment", other than her low IQ imposes a significant work-related limitation.  *Keitt*, 2005 WL 1258918, at *4.  District Courts in this Circuit have adopted the approach taken by the First, Eighth and Tenth Circuits holding that a limitation other than low IQ is "significant" if the claimant suffers from an additional physical or other mental impairment that is "severe" as that term is defined at step two of the Commissioner's sequential analysis.  *See Baneky v. Apfel*, 997 F.Supp 543, 546 (S.D.N.Y. 1998); *Aviles v. Barnhart*, 2004 WL 11465055, *7 (E.D.N.Y. 2004).   The Commissioner must specifically determine whether any of plaintiff's limitations, except for her low IQ, satisfy the second element of Listing 12.05(c).  *Aviles*, 2004 WL 1146055, at *7; *Antonetti v. Barnhart*, 399 F.Supp.2d 199, 202 (W.D.N.Y. 2005).

This Court finds substantial evidence in the record to support the ALJ's finding that plaintiff's headaches, depression and learning disability do not meet the criteria for disability as described in Section 12.05(c). (T. 16).  Further, upon review, the Court finds that the ALJ employed the correct legal standard.  Regarding headaches, plaintiff asserts that she only takes medication for her headaches when she has one. (T. 212).  She has not treated with a specialist for this condition.  (T. 210).  The treating physician, Dr. Brink-Cymerman, notes in her report of January 17, 2003 that plaintiff's headaches are relieved with Tylenol. (T. 178).  Further, plaintiff can go "for a couple of months at a time without having any problems". (T. 178).  Plaintiff was never diagnosed with any neurological abnormality related to her headaches.  *See Banks v.*

---

[2] In the case at hand, the ALJ concluded that "claimant's impairment does not meet the criteria for disability as described in Section 12.05C".  However, the ALJ continued the analysis and addressed Steps 4 and 5 of the sequential analysis.  (T. 16).

*Massanari*, 258 F.3d 820, 826 (8th Cir. 2001) (holding that lack of medical treatment for headaches and vague testimony at hearing failed to establish that plaintiff's headaches resulted in any more than a slight limitation in her ability to engage in work-related activities). Moreover, plaintiff does not allege that her headaches made her unable to perform her prior work, rather, she advised her doctors that she stopped working at the suggestion of child protective services. (T. 17). Additionally, plaintiff's claims and complaints during the hearing regarding her headaches were vague and unsupported by the record.[3] Thus, there is little evidence that plaintiff suffers from headaches that impose a significant work related limitation.[4]

With respect to plaintiff's depression, substantial evidence supports the ALJ's conclusion that this condition was "intermittent and short term at most". (T. 16). Plaintiff's initial treatment for this condition was with Dr. Tran who prescribed Paxil in March of 2002. (T. 117). However, when she was examined by Dr. Barry in June of 2002, she did not "appear anxious or depressed". (T. 138). During her January 2004 visit with Dr. Hayman, plaintiff stated that she stopped taking anti-depressants because "they made her drowsy". (T. 160). Furthermore, plaintiff's testimony at the hearing regarding her daily activities, as noted above, is inconsistent with her claims of debilitating depression.[5] Thus, there is substantial evidence to support the ALJ's conclusion that plaintiff's depression does not meet the second prong of §12.05(c). *See Banks*, 258 F.3d at 825.

---

[3] The ALJ found "the claimant's allegations regarding the severity of her impairments are not totally credible". (T. 19). Plaintiff does not challenge the ALJ's findings in this regard.

[4] Initially, it should be noted that during the hearing, plaintiff's counsel specifically stated that the "IQ and major depressive disorder . . . that's really what we're going on the disability for". (T. 213) Now, in her Objection, plaintiff claims that her chronic headaches and learning disorder are "severe". *See* Plaintiff's Objections at p. 5.

[5] Again, plaintiff does not object to the ALJ's conclusion that her complaints of depression are not entirely credible.

11

The only other "impairment" set forth by plaintiff as disabling is her learning disability.[6] Plaintiff's learning disability, however, is a symptom or manifestation of plaintiff's mental retardation and thus does not, in this case, satisfy her obligation to show an additional impairment that meets the second part of Section 12.05(c). *See Buckner v. Apfel*, 213 F.3d 1006, 1012 (8th Cir. 2000) (concluding that plaintiff's learning disability, lack of good judgment and difficulty concentrating and reasoning cannot satisfy her obligation to show an additional impairment that meets the second part of section 12.05(c)).

The evidence of plaintiff's alleged physical and other mental impairments, even when such impairments are considered together, is not so overwhelming as to support an immediate finding of disability under §12.05(c). Accordingly, the Court concludes that the ALJ and the Appeals Council employed the correct legal standards and that there is substantial evidence to support the decision that plaintiff's headaches, depression and learning disability do not constitute an additional and significant limitation of function as required by § 12.05(c).

Throughout her objection, plaintiff argues that the ALJ should have provided "some commentary on how it was determined [that plaintiff's impairment would not meet or equal a Listing]". *See* Plaintiff's Objections at p. 2. As discussed above, there is substantial evidence to support the ALJ's decision. When, as here, the evidence of record permits the Court to glean the rationale of an ALJ's decision, the Court will not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)

---

[6] Plaintiff alleges that she has a learning disability but does not elaborate further or cite to any portion of the record which would support or suggest that she was diagnosed with such a condition.

This Court finds that the ALJ satisfied his duty to develop the record in this matter. As discussed above, the ALJ had sufficient evidence before him to determine that plaintiff was not disabled. The reports from all examining physicians, as well as plaintiff's test records, provided the ALJ with substantial evidence about plaintiff's conditions and treatment. Thus, the ALJ acknowledged the relevant facts in plaintiff's case. Accordingly, the Court finds this claim to be without merit.

### VII.   CONCLUSION

Based upon the foregoing, and for the reasons stated in the Report-Recommendation, it is hereby

**ORDERED** that the Report-Recommendation of Magistrate Judge David R. Homer is **ADOPTED** in its entirety; and it is further

**ORDERED** that the defendant's motion for judgment affirming the Commissioner's decision denying disability benefits is **GRANTED;** and it is further

**ORDERED** that the complaint is **DISMISSED.**

**IT IS SO ORDERED**

Dated: February 12, 2008
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge